**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GLORIA WALKER** | § | |
| **on behalf of M.W.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:09-CV-1900-BH** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pursuant to the consent of the parties and the District Court's *Order of Reassignment*, dated January 4, 2010, this case has been transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court are *Plaintiff's Motion for Summary Judgment and Brief in Support*, filed January 4, 2010, *Defendant's Motion for Summary Judgment*, filed January 22, 2010, and *Plaintiff's Reply Brief*, filed February 9, 2010. Based on the filings, evidence and applicable law, Plaintiff's motion is **DENIED**, Defendants's motion is **GRANTED**, and the final decision of the Commissioner is **AFFIRMED**.

## I.  BACKGROUND[1]

### A.    <u>Procedural History</u>

Gloria Walker, on behalf of her minor grandson M.W. ("Plaintiff"), seeks judicial review of

---

[1]The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under Title XVI of the Social Security Act. On April 20, 2006, Ms. Walker filed an application for Title XVI supplementary security income ("SSI") payments on behalf of Plaintiff. (Tr. at 74-76). She claimed that Plaintiff had been disabled since March 1, 2004, due to learning, mental, and hearing problems. (Tr. at 86). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 15). Ms. Walker timely requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* Plaintiff personally appeared and testified at a hearing held on April 30, 2008. (Tr. at 328-29, 346-52). On July 17, 2008, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 12-25). Ms. Walker then requested the Appeals Council to review the ALJ's decision in light of newly submitted medical evidence. (Tr. at 10-11, 314-27). The Appeals Council denied her request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 4-6). On October 8, 2009, Ms. Walker timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.    Factual History**

**1.    Age, Education, and Work Experience**

Plaintiff was born on April 30, 1997. (Tr. at 18, 74). He was 11 years old and in the fifth grade at the time of the hearing before the ALJ. (Tr. at 74, 328, 346).

**2.    Medical Evidence**

Plaintiff's relevant medical history begins on December 6, 2004, when Frank E. Cumley, M.D., conducted a psychological evaluation of him. (Tr. at 211). Dr. Crumley's summary states that Plaintiff was born to a drug and alcohol-abusing mother who had engaged in substance abuse during her pregnancy and who emotionally and physically abused him after his birth. *Id.* At age

two, Plaintiff was placed in the custody of his grandmother, but his mother still visited him. *Id.*

Plaintiff was very withdrawn and disruptive prior to and after his mother's visits, and he wanted to

be left alone for days. *Id.* He cried easily and manifested his anger by fist clenching. *Id.* He was

very active and restless at home and at school. *Id.* He was at grade level, and his grades were

mostly As. *Id.* Socially, he enjoyed playing with his many friends. *Id.* He had a blinking tic,

occasional facial grimaces, and pronunciation problems, and he had suffered from decreased hearing

that had been corrected. *Id.*

Dr. Crumley noted that Plaintiff was a friendly 7-year old boy whose speech was

conversational and appropriate for his age. (Tr. at 212). He spoke rapidly and it was difficult to

understand some of his words, but he had a good vocabulary and was able to express himself well.

*Id.* Plaintiff did not appear depressed during the session, played spontaneously with toys, and

appeared very intelligent and above average in intellectual capability. *Id.* Dr. Crumley diagnosed

Plaintiff with attention deficit hyperactivity disorder, adjustment disorder with depressed mood,

phonological disorder, and tic disorder, and assigned him a Generalized Assessment of Functioning

("GAF") score of 50. *Id.*

In April of 2005, Plaintiff's mother was killed by her boyfriend; her relatives found her body

one week later. (Tr. at 278). After that, Plaintiff became depressed, withdrawn, and subject to

outbursts of temper. (Tr. at 134). As a result, he was placed in counseling at the Victims's

Outreach Center ("VOC"), where he was scheduled to be seen on a weekly basis. *Id.* During these

visits, Plaintiff appeared happy, content, pleased, excited, delighted, confident, proud, determined,

free, curious, interested, focused, and contained. (Tr. at 258-60, 263 265-267, 272-75). On a few

occasions, he also appeared angry, impatient, sad, disappointed, afraid, vulnerable, and distrustful.

(Tr. at 258-59, 263, 267, 275). VOC staff noted themes of trauma, death, safety, and victimization

in his play.  (Tr. at 249-256).

In July of 2006, on referral from the Disability Determination Division, J. Lawrence Muirhead, Ph.D., conducted a psychological evaluation of Plaintiff.  (Tr. at 134).  Dr. Muirhead opined that even though Plaintiff continued to be subject to temper tantrums occasionally, he had made a substantial emotional recovery and was able to verbalize his feelings about his mother's death due to VOC counseling.  *Id.*  He noted that the progress was sufficient enough for Plaintiff's VOC counselor to consider terminating his counseling.  (Tr. at 134).  Dr. Muirhead reported that Plaintiff had never been treated with psychotropic medications and did not have a history of psychiatric hospitalizations.  *Id.*  His mental status reflected elements of performance anxiety but he was not in any acute psychological distress.  *Id.*  He had a history of ear infections and had been fitted with ear tubes but was readily responsive to any inquiries and could speak fluently.  *Id.*  Dr. Muirhead noted that Plaintiff had never been placed in special education but had received tutoring in reading comprehension and math.  (Tr. at 135).  He had recently passed the TAKS test and his most recent report card reflected passing grades in all core subjects.  *Id.*  He had two incidents of fighting in the past year but was not suspended from school.  *Id.*  He had cooperative relationships with other children, and had both cooperative and oppositional relationships with his teachers.  *Id.*

As to Plaintiff's adaptive behavior, Dr. Muirhead noted that Plaintiff required prompting and supervision in order to attend to his dress and hygiene.  *Id.*  He participated in routine household chores such as taking out trash, picking up clothes and toys, sweeping, and vacuuming.  *Id.* Occasionally, he was subject to mild displays of temper but did not destroy property or get physically aggressive.  *Id.*  Dr. Muirhead reported that there were no other children in Plaintiff's immediate neighborhood, and he enjoyed playing with his cousins in his uncle's home.  *Id.*  His outdoor interests were primarily limited to basketball, but he had previously been a member of a

- 4 -

football team.  *Id.*  Most of his interests were indoor activities – he enjoyed playing video games, reading books, and visiting the library.  *Id.*  Regarding his mental status, Dr. Muirhead noted that Plaintiff was mildly tense, occasionally fidgeting in his chair, but did not appear excessively restless or hyperactive, and was polite and cooperative.  *Id.*  Even though he had elements of performance anxiety, his thought processes were relevant and goal-directed.  *Id.*  He had no difficulty remaining topic-oriented during the interview.  *Id.*  On a test of immediate recall, he was able to repeat four digits forward and four digits backward, which fell within the average range of a child his age.  *Id.*  On a test of delayed recall, Plaintiff was able to repeat three of three presented items after a five minute delay.  *Id.*  His thought processes reflected adequate conceptual development.  *Id.*

Intellectually, he appeared to be in an average to low average range.  *Id.*  There was no evidence of psychotic process or impairment of reality testing.  (Tr. at 135-36).  His judgment was intact, his sensorium was clear, and he was able to correctly specify both his date of birth and the date of the evaluation.  (Tr. at 136).  Plaintiff obtained an average full scale IQ score of 91, a low average verbal IQ score of 87, and a performance IQ score of 98 reflecting no areas of deficit in performance.  (Tr. at 136-37).  Plaintiff had average visual-motor ability for a child his age.  (Tr. at 137).  He had average academic achievement levels in both language and mathematics.  *Id.*  Dr. Muirhead did not find any evidence of a learning disorder, and diagnosed Plaintiff with adjustment disorder with depressed mood in partial remission.  *Id.*  He ascribed Plaintiff a GAF score of 65. *Id.*

Later that same year, Monica Fisher, M.D., a non-examining state agency doctor completed a childhood disability evaluation of Plaintiff.  (Tr. at 138-43).  The doctor found that Plaintiff had the severe impairment of adjustment disorder with depressed mood in partial remission, but that the impairment did not medically equal or functionally equal the listing.  (Tr. at 138).  She found that

Plaintiff had no limitations in his health and physical well being, and in his abilities to acquire and use information, and move about and manipulate objects. (Tr . at 140-41). She found less than marked limitations in Plaintiff's ability to interact with others and care for himself and marked limitations in his ability to attend and complete tasks. (Tr. at 140). In January of 2007, Dr. Bonnie Blacklock, M.D., a non-examining state agency doctor, also completed a childhood disability evaluation for Plaintiff and reached the same conclusions as Dr. Fisher. (Tr. at 128-133).

In 2008, Plaintiff was examined at Dallas Metrocare Services. (Tr. at 296). Plaintiff's grandmother reported that he had difficulty concentrating and staying asleep. *Id.* He was irritable, got frustrated and startled easily, and withdrew into himself every once in a while. *Id.* He experienced some sadness, had an appetite increase, and had gained some weight. (Tr. at 297). Staff at Dallas Metrocare diagnosed Plaintiff with chronic post-traumatic stress disorder. *Id.*

After the ALJ had issued his disability decision, an advanced practice registered nurse at Dallas Metrocare, Thomas Langham, assessed whether Plaintiff had met the listed impairment requirements for a mood disorder. (Tr. at 324-26). He concluded that Plaintiff's condition satisfied the requirements for severity outlined in listing 112.04 as of post-traumatic stress disorder. (Tr. at 326). He noted that Plaintiff had major depressive syndrome characterized by depressed or irritable mood, appetite or weight increase, sleep disturbance, fatigue or loss of energy, and difficulty thinking or concentrating, thus satisfying the A criteria for listing 112.04. (Tr. at 324). However, he did not annotate any of the B criteria required to meet listing 112.04. (Tr. at 325-26).

### 3. School Records

Plaintiff's second grade report card showed that his lowest average grade was 87 in handwriting, with the remainder of his grades for the entire year falling between 91 and 100. (Tr. at 285). His citizenship ratings were excellent in eleven of twelve categories and in overall conduct,

and he was rated satisfactory in the remaining two categories.  *Id.*  Plaintiff's third grade report card reflected declining grades in most classes.  (Tr. at 284).  His lowest average grades for the two semesters were 60 and 62 in social studies and science respectively, whereas the remaining subjects ranged between 72 and 97.  *Id.*  Of the twelve citizenship categories, Plaintiff needed improvement in taking pride in work, completing assigned work on time, listening, following directions, and using time wisely.  *Id.*  He was rated satisfactory or excellent in the remaining categories and satisfactory for overall conduct.  *Id.*

### 4.    Hearing Testimony

Plaintiff, his grandmother, and a medical expert ("ME") testified at a hearing before the ALJ on April 30, 2008.  (Tr. at 328-29).  Plaintiff was represented by an attorney.  (Tr. at 328).

#### a.  *Plaintiff's Testimony*

Upon examination by the ALJ, Plaintiff testified that he was a fifth grade student, liked his school and friends, and had a best friend named Corey since kindergarten.  (Tr. at 346).  He went to school regularly, enjoyed science, and did not like math.  (Tr. at 347).  He was not taking any medications but kept an asthma pump at home.  (Tr. at 347-48).  He was allowed to participate in physical activities and sports at school, and he played TV games with his younger sister on the weekends.  (Tr. at 348-49).  Even though he sometimes complained, he cleaned his room when his grandmother asked him to do so.  (Tr. at 349).

Upon examination by his attorney, Plaintiff testified that after coming home from school at 3:30 p.m., he did not see his best friend Corey or play with other kids.  (Tr. at 350).  Instead, he put on his pajamas, cleaned his room if it was messy, and then got into bed and watched TV.  *Id.*  He sometimes played with his cousins on the weekends.  (Tr. at 350-51).  Plaintiff testified that he played basketball,  football, and soccer.  (Tr. at 351).  He played with other people at the park but

got nervous around new people.  (Tr. at 352).

### b.  Witness' Testimony

Plaintiff's grandmother testified that Plaintiff played basketball at school and at home with his sister and cousins.  (Tr. at 352-53).  He did not play on the weekends, however, and he spent the rest of his time in his room.  (Tr. at 352-53).  He ate dinner with his grandparents and sometimes in the den with his sister and cousins.  *Id.*  In the mornings, he got ready quicker than anybody else and ate breakfast by himself a lot.  *Id.*  Plaintiff did not like strangers, loud people, or rap music.  *Id.*  He got startled easily, and his family had to warn him before approaching his room.  (Tr. at 354).  He got frustrated and started crying if he was unable to complete a task, such as putting a racetrack together.  *Id.*

### c.  Medical Expert's Testimony

The ME testified that based on the objective evidence in the record, Plaintiff did not meet or equal a listed impairment.  (Tr. at 332).  She stated that when Plaintiff was seven and his mother was still alive, Dr. Cromley diagnosed him with attention deficit disorder, adjustment disorder with depressed mood, a pharmacological disorder, and a tic disorder. (Tr. at 333).  The ME opined that the diagnosis was perfunctory, however, because Dr. Cromley noted in his evaluation that Plaintiff was making mostly As at school, had many friends, and did not appear depressed.  (Tr. at 334-35).

The ME also testified that Dr. Muirhead conducted a psychiatric evaluation of Plaintiff at age nine after his mother's death, and he noted that Plaintiff had not been treated with any psychotropic medications, had no history of psychiatric hospitalization, and had a little bit of performance anxiety.  (Tr. at 334).  Dr. Muirhead did not find Plaintiff in any type of acute psychological disstress.  *Id.*  He noted in his evaluation that Plaintiff had recently passed the TAKS test, and although he had some tutoring, he had never been placed in special education.  *Id.*  He had

been in a couple of fighting incidents, but nothing serious enough to warrant suspension.  (Tr. at 335).  He did not engage in any type of destructive or particularly aggressive behavior.  *Id.*  He loved books, enjoyed video games, had interests, and had a full scale IQ of 91 and a performance IQ of 98, both of which fell in the average range, and a verbal score that was a tiny bit in the low average range.  *Id.*  Dr. Muirhead diagnosed Plaintiff with adjustment disorder with depressed mood and gave him a high GAF score of 65.  *Id.*

Based on these records, the ME opined that after his mother's death, Plaintiff did not have a significant limitation in acquiring and using information because he scored well on the tests given to him.  (Tr. at 335-36).  He was passing school, seemed to be progressing in it, and was not in special ed.  (Tr. at 336).  He had some difficulty with completing tasks but was in counseling for it.  *Id.*  Because he could repeat four digits forward and backward, he demonstrated a rather significantly good ability at concentration.  *Id.*  The ME stated that even though Plaintiff did not always complete his tasks without being prompted, his limitation in completing tasks was less than marked because it took a lot of concentration to read four digits backward.  *Id.*  As to his interactions and relations with other children, he seemed to have friends.  *Id.*  He had no problem in manipulating objects.  *Id.*  Because most children would require some prompting with household chores, there was no reason why Plaintiff would have any limitation with taking care for himself.  *Id.*

The ME testified that based on the Metrocare records, ten-year old Plaintiff was doing well in school, denied behavioral problems, was cooperative, had normal speech, had no sign of psychotic behavior or delusions, had organized thoughts and a happy mood, had no depression, was alert and oriented by three, had memory intact, and had normal attention and fair insight.  (Tr. at 337).  The ME stated that even though Plaintiff's grandmother reported some problems with nightmares etc., they were not consistent over a period of time.  (Tr. at 338).  The ME concluded that

based on his medical record, Plaintiff simply did not meet a listing under the social security standards. *Id.*

Upon cross-examination by Plaintiff's attorney, the ME acknowledged that there were some low GAF scores in Plaintiff's medical record but expressed low confidence in GAF scores because they represented an instantaneous snapshot at a particular time. (Tr. at 339-40). When Plaintiff's attorney pointed the ME to evidence that Plaintiff had gained four to five pounds over the last three months, the ME state that this was not significant because Plaintiff was a young growing man. (Tr. at 345).

## C.   ALJ's Findings

The ALJ denied Plaintiff's application for benefits by written opinion issued on July 17, 2008. (Tr. at 12-25). Because the ALJ determined that Plaintiff was a school-aged child at the time of the application as well as at the time of the decision, he analyzed Plaintiff's claim under the modified sequential evaluation applicable to childhood disability. (Tr. at 15-18). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period. (Tr. at 18, ¶2). At step two, the ALJ found that Plaintiff's adjustment disorder with depressed mood was a severe impairment. (Tr. at 18, ¶3). At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listed impairment in the regulations. (Tr. at 18, ¶4). He also found that Plaintiff's impairment did not functionally equal a listing because he had no limitations in interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being, and had less than marked limitation in acquiring and using information, and attending and completing tasks. (Tr. at 18-25, ¶5). Accordingly, the ALJ concluded that Plaintiff had not been disabled, as defined in the Social Security Act, since the date of his application. (Tr. at 25, ¶6).

## II.  ANALYSIS

### A.      Legal Standards

#### 1.        Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3).  Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.  A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program.  *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985).  Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.  *See id.*  Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *Id.*

## 2.       Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as

defined by the Social Security Act.  *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638,

640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v.*

*Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).  The Commissioner utilizes a sequential three-step

inquiry to determine whether a child is disabled and entitled to monthly benefits under the Social

Security Act:

1.      A child who is working and engaging in substantial gainful activity will not
be found disabled regardless of medical findings.

2.      A child who does not have a "severe impairment" will not be found to be disabled.

3.      A child whose impairment "meets, medically equals, or functionally equals" a listed
impairment in the regulations will be considered disabled.

20 C.F.R. § 416.924(a).  If the ALJ finds a severe impairment, he or she must then consider whether

the impairment "medically equals" or "functionally equals" a listed disability.   20 C.F.R. §

416.924(c)-(d).

In determining whether a child's impairment functionally equals a listed disability, the

impairments are evaluated for severity in six domains: (1) acquiring and using information; (2)

attending and completing tasks; (3) interacting and relating with others; (4) moving about and

manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. §

416.926a(b)(1).  In evaluating a child's ability to function in each domain, the Commissioner

considers (1) the activities the child is able to perform; (2) the activities the child is not able to

perform; (3) which of the child's activities are limited or restricted compared to children of the same age who do not have impairments; (4) whether the child has difficulty with activities at home, in childcare, at school, or in the community; (5) whether the child has difficulty independently initiating, sustaining, or completing activities; and (6) what kind of help the child needs to do activities, how much, and how often. 20 C.F.R. § 416.926a(b)(2).

If the evidence shows that a child's impairment seriously interferes with his or her ability to independently initiate, sustain, or complete activities, the impairment is considered "marked." 20 C.F.R. § 416.926a(e)(2)(i). If the evidence shows that a child's impairment very seriously interferes with his or her ability to independently initiate, sustain, or complete activities, the impairment is "extreme." 20 C.F.R. § 416.926a(e)(3)(I). In order to demonstrate functional equivalence, the child must exhibit a "marked" limitation in two of the domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

## B.   Issue for Review

Plaintiff presents three issues for review:

(1)   whether the Appeal Council's failure to address a medical source statement with the specificity required by the Regulations, Fifth Circuit case law, and HALLEX was reversible error;

(2)   whether the ALJ gave proper weight to, or stated with adequate detail the weight given to, the testimony of Gloria Walker.

(3)   whether the ALJ provided sufficient reasoning for his findings regarding Plaintiff's capacity in the six domains for function listed in 20 C.F.R. § 416.926a(d).

(Pl. Br. at 1-2).

## C.   Medical Source Statement

Plaintiff contends that the Appeals Council failed to address a listing assessment by nurse practitioner Langham provided to the Appeals Counsel in conjunction with his request for review

with the specificity required by Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-2-5-1 and Social Security Ruling ("SSR") 06-03p.  (P. Br. at 7-10).  Plaintiff contends that the Appeal Council's failure to address this evidence requires remand because the evidence is new, material, and related to the period before the ALJ's decision.  (P. Br. at 11-13).

In the Fifth Circuit, evidence submitted by a claimant to the Appeals Council does not *per se* require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision.  *See Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005); *Higginbotham v. Barnhart*, 163 F. App'x. 279 (5th Cir. 2006) ("*Higginbotham II*"); *McGee v. Astrue*; 2009 WL 2841113, at *5 (W.D. La. Aug. 28, 2009).  Rather, the court should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are still supported by substantial evidence.  *Higginbotham II*, 163 F.App'x at 281.  New evidence requires remand only if it "dilute[s] the record to the point that the ALJ's ultimate finding is insufficiently supported." *Id.*; *Okolie v. Astrue*, 2008 WL 1947103, at *4 (N.D. Tex. May 2, 2008).

Here, the Appeals Council's denial expressly stated that it had considered the additional evidence in reviewing the ALJ's decision.  (Tr. at 4).  The Appeals Council was not required to provide more specificity, either in conjunction with HALLEX § I-2-5-1 or SSR 06-03p, because the requirement of a detailed discussion of additional evidence and for specific responses to contentions in denial notices was suspended by a memorandum from the Executive Director of Appellate Operations, dated July 20, 1995.[2]  *Higginbotham*, 405 F.3d at 335 n.1; *McGee v. Astrue*; 2009 WL 2841113, at *5 (W.D. La. Aug. 28, 2009); HALLEX § I-3-5-9-0.  As noted, failure to address new

---

[2] "Although the suspension was purportedly temporary, there is no indication that it has been lifted." *McGee v. Astrue*; 2009 WL 2841113, at *5 (W.D. La. Aug. 28, 2009).

evidence does not require remand unless the new evidence dilutes the record to such an extent that the ALJ's determination is insufficiently supported.

Here, even with Mr. Langham's assessment that Plaintiff met the listing requirements of a mood disorder, substantial evidence supports the ALJ's determination that Plaintiff did not meet any listed impairments. First, Mr. Langham's assessment did not demonstrate that Plaintiff had marked limitations in two of the six functional domains, or that he had met a listed impairment. Mr. Langham noted that Plaintiff met the listed impairment for a mood disorder but did not mark any of the B criteria required to meet the listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria."). In order to satisfy Part B of the listing, Plaintiff must have had at least two of the following: (a) marked impairment in age-appropriate cognitive/communicative function, (b) marked impairment in age-appropriate social functioning, (c) marked impairment in age-appropriate personal functioning, and (d) marked difficulties in maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.04. Moreover, objective medical evidence does not support Mr. Langham's conclusory opinion that Plaintiff meets the mood disorder listing. *See Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005).

Instead, the objective medical evidence of record supports the ALJ's contrary conclusion. The ME and state agency doctors opined that Plaintiff did not meet any listed impairments. There was evidence that Plaintiff maintained age-appropriate communicative skills; his speech was appropriate and conversational for his age, he had a good vocabulary, and he was able to express himself well. (Tr. at 135-37, 212). He also had good cognitive skills; his thought process was relevant, goal-directed, and reflected adequate conceptual development; he had no difficulty

remaining topic oriented and was able to pass the immediate recall and delayed recall tests. (Tr. at 135).   As to age-appropriate social functioning, Plaintiff appeared friendly to his evaluating physicians, had many friends, had a best friend since kindergarten, played with his cousins and sister, enjoyed sports such as basketball and football, and maintained cooperative relationships with other children.   (Tr. at 135, 211-212, 346, 350-51).   At age seven, he needed prompting and supervision in order to tend to his dress and hygiene, but as the ME noted, this was typical of children his age. (Tr. at 135, 336).   The ME noted that Plaintiff demonstrated a "rather significantly good ability" at concentration because he could repeat four digits forward and backward.   (Tr. at 336).

Additionally, Plaintiff seemed to be doing well overall.   Dr. Muirhead noted that plaintiff had made a substantial emotional recovery since his mother's death to the point that his VOC counselor was considering terminating the counseling.   (Tr. at 134).   VOC staff found Plaintiff to be mostly happy, even if he displayed some anger, disappointment, and sadness.   (Tr. at 258-75).   Dr. Crumley and Dr. Muirhead did not find any significant mental and physical limitations while evaluating Plaintiff.   (*See* Tr. at 211-12, 134-37).   Plaintiff's own testimony and that of his grandmother did not identify any such limitations.   (Tr. at 346-54).   In the face of this evidence, the ALJ was not required to credit Mr. Langham's opinion that Plaintiff had met the mood disorder listing, especially since he did not specify that Plaintiff had met the B criteria for the listing.   *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion).

In sum, remand is not required because Mr. Langham's incomplete listing assessment does not dilute the evidence to the point that the Commissioner's determination becomes insufficiently

supported.

D.      **Weight Accorded Plaintiff's and his Grandmother's Testimony**

Plaintiff asserts that the ALJ failed to give proper weight, or state the weight given, to Ms. Walker's testimony.  (P. Br. at 14-15).  He also asserts that the ALJ does not provide a proper credibility assessment regarding Plaintiff's and Ms. Walker's testimony.  (P. Br. at 15).

Credibility determinations by an ALJ are entitled to deference.  *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).  The ALJ is in the best position to assess a claimant's credibility since the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing."  *Falco v. Shalala*, 27 F.3d 164 n.18 (5th Cir. 1994).  Nevertheless, the ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).

To shed light on an individual's credibility, Social Security regulations provide a non-exclusive list of the following seven relevant factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; (6) measures other than treatment the claimant uses to relieve pain or other symptoms (e.g., lying flat on his or her back); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms."  20 C.F.R. § 416.929(c)(3).  Although the ALJ must give specific reasons for his credibility determination, "neither the

- 17 -

regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F.Supp.2d 863, 871 (E.D. Tex. 2005). Moreover, the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints. *Falco*, 27 F.3d at 164.

In this case, the ALJ stated that he had considered the objective medical evidence as well as other evidence in accordance with SSR 96-7p and 20 C.F.R. 416.929, and that based on the evidence, he did not find Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms credible. (Tr. at 18, 20-21). Although not in a formal fashion, the ALJ also considered the factors outlined in 20 C.F.R. § 416.929(c)(3). Regarding his daily activities, the ALJ noted that Plaintiff played sports and performed household chores. (Tr. at 19). For pain and other symptoms, he noted that Plaintiff had problems with loud noises, loud people, and loud music. *Id.* As to precipitation, he stated that Plaintiff got frustrated and cried, took deep breaths, and threw things in the trash if he couldn't figure them out. *Id.* Concerning medication and treatment, he noted that Plaintiff did not take any medication but had an asthma pump. *Id.* Regarding measures to relieve his symptoms, the ALJ stated that Plaintiff took deep breaths. *Id.* Thus, in his written decision, the ALJ explicitly addressed all of the factors enumerated in 20 C.F.R. § 416.929(c)(3), except the catch-all provision. Any requirement that the ALJ enumerate the seven factors or address the catch-all provision would impose a "formalistic rule" on a determination in which the ALJ is entitled deference. *Falco*, 27 F.3d at 164; *see Carrier*, 944 F.2d at 247.

In his written decision, the ALJ also noted Ms. Walker's testimony that Plaintiff played

basketball at school and at home, and otherwise stayed in his room; that he had problems with loud noise, loud people, and loud music; and that he sometimes got frustrated and cried, took deep breaths, and threw things in the trash if he could not figure them out. (Tr. at 19). After noting her testimony, the ALJ summarized the objective medical evidence and stated that the statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms were not credible to the extent that they were inconsistent with the finding supported by objective medical evidence that Plaintiff had not met or equaled a listing. (Tr. at 20-21). Again, although not in a formalistic way, the ALJ made a credibility finding regarding Ms .Walker's testimony and provided specific reasons for the finding.

Based on a review of the medical evidence, testimony, and the administrative decision, the Court finds that the ALJ evaluated Plaintiff's and Ms. Walker's credibility in accordance with proper legal standards. *Greenspan*, 38 F.3d at 236. The Court further finds that substantial evidence supports the ALJ's conclusion that their statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely credible. *Leggett*, 67 F.3d at 564.

**E.    Six Functional Domains**

Plaintiff asserts that the ALJ failed to provide reasoning for his findings on Plaintiff's capacity in the six domains of functioning. (Pl. Br. at 15-17). He states that "the ALJ's decision must stand or fall with the reasons set forth in his decisions." (*See* P. Br. at 16, citing *Newton*, 209 F.3d at 455). Defendant asserts that Plaintiff takes the ALJ's findings in isolation without considering the ALJ's discussion of the objective medical evidence. (D. Br. at 16).

Even if an ALJ discusses the entire evidence of record, he must still "build a logical bridge from the evidence to the conclusion" and discuss his findings in such a way that a court can conduct

meaningful review to determine the existence of substantial evidence to support his decision.  *See*

*Morris v. Barnhart*, 326 F.Supp.2d 1203, 1212 (D. Kan. July 19, 2004); *Smith v. Astrue*, 2010 WL

679787, at *1 (S.D. Ind. Feb. 22, 2010) (citing *Hopgood v. Astrue*, 578 F.3d 696, 698 (7th Cir.

2009).  The ALJ's failure to support each functional domain with specific evidence may thwart

meaningful review, especially if a plaintiff objects to the ALJ's conclusions regarding the six

domains, and there is evidence to support a greater degree of limitation than what the ALJ found

with respect to the domains.  *Morris*, 326 F.Supp.2d at 1212; *Rios v. Barnhart*, 365 F.Supp.2d 637,

644-45 (E.D. Pa. Mar. 29, 2009).  However, if the Court can determine that substantial evidence

supports the ALJ's findings regarding the six domains, failure to cite to the record constitutes

harmless error and does not require remand.  *See Holloway v. Astrue*, 2009 WL 305127, at *8 (N.D.

Ga. Feb. 9, 2009).

Plaintiff objects to the lack of specific findings under the six domains but contends that there

were marked limitations in only two domains, i.e., acquiring and using information and ability to

attend and complete tasks.  (P. Br. at 16-17).  As to acquiring and using information, the ALJ

acknowledged in his written decision that Plaintiff's grades and citizenship ratings in some areas had

declined but noted that Plaintiff had passing grades in all of the subjects.  (Tr. at 19-20).  Except for

two grades in the 60s, Plaintiff's remaining average grades ranged between 72 and 97.  (Tr. at 20,

284).  The ALJ also noted that Plaintiff had an average IQ score of 91 and had passed the TAKS

test.  (Tr. at 9).  Additionally, he discussed the ME's testimony that Plaintiff did not have any

limitations in acquiring and using information.  (Tr. at 20).  There is substantial evidence in the

record to support the ALJ's findings that Plaintiff had less than marked limitations in acquiring and

using information, and no evidence to support Plaintiff's contention that he had marked limitations

in that functional domain.

The ALJ also found that Plaintiff had less than marked limitation in attending and completing tasks.  (Tr. at 22).  Under that finding, the ALJ specifically noted that Plaintiff had compromised frustration tolerance and depressed mood, which affected his ability to concentrate at times, and that he needed improvement in completing tasks on time.  *Id.*  He noted, however, that Plaintiff had demonstrated performance.  *Id.*  His narrative discussion further supported his finding. He acknowledged Ms. Walker's statement to Dr. Muirhead that Plaintiff required prompting and supervision to attend to his dress and hygiene, but also pointed to evidence that Plaintiff participated in routine household chores including taking out trash, picking up clothes and toys, sweeping, and vacuuming.  (Tr. at 19).  He also noted the ME's testimony that Plaintiff had less than marked limitations in attending and completing tasks.  (Tr. at 20).  In sum, substantial evidence supports the ALJ's findings that Plaintiff had less than marked limitations in attending and completing tasks.

Plaintiff contends that the ALJ did not adequately address the state agency doctor's finding that Plaintiff had marked limitations in the area of attending and completing tasks.  (P. Br. at 16-17). He asserts that the ALJ noted in his narrative discussion that he gave some weight to the state agency opinion but did not specifically address why he did not accept it.  (P. Br. at 17). The ALJ's oversight in this regard is not fatal to his ultimate disability determination because the agency doctor concluded that Plaintiff had marked limitation in only one of the domains, when he needed marked limitation in at least two domains.  *See Jones v. Astrue*, 2009 WL 1911691, at *10 (E.D.N.C. June 30, 2009).  Additionally, the doctor's ultimate conclusion was consistent with the ALJ's decision that Plaintiff's impairment was severe but did not meet, medically equal or functionally equal the listings.  *See id.*; (Tr. at 4, 128, 138).

Based on the ALJ's written decision, the Court was able conduct a meaningful review of, and find that substantial evidence supports, the ALJ's conclusions.  Remand is therefore not required.

### III.    CONCLUSION

*Plaintiff's Motion for Summary Judgment* is **DENIED**, *Defendant's Motion for Summary Judgment* is **GRANTED**, and the final decision of the Commissioner is **AFFIRMED**..

**SO ORDERED, on this 13th day of March, 2010.**

**IRMA CARRILLO RAMIREZ**
**UNITED STATES MAGISTRATE JUDGE**